UNION PAC. R. CO. v. AMERICAN SMELTING & REFINING CO.

(Circuit Court of Appeals, Eighth Circuit. December 19, 1912.)

No. 3,769.

*(Syllabus by the Court.)*

1. CARRIERS (§ 194*)—CONSIGNEE'S LIABILITY FOR FREIGHT CHARGES.

An implied contract by the consignee to pay the freight charges on goods shipped under a bill of lading containing the stipulation, "the consignee or consignees paying freight," or any similar provision, arises from the acceptance by the consignee of the delivery of the goods under the bill, because the consignee knows that the carrier looks to him for the charges and by delivery waives his lien therefor in the faith that the consignee will pay them.

For the same reason an implied contract by the consignee to pay the freight charges, in the absence of a bill of lading, arises where the con-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

signee knows that the carrier looks to him for their payment and waives his lien therefor and delivers the goods in the faith that the consignee will pay them.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 870–872; Dec. Dig. § 194.*]

2. CARRIERS (§ 194*)—CONCLUSION.

Interstate shipments of ore consigned to the defendant were made. The legal charges for the transportation of this ore and the reasonable value of the transportation were $7,549.70. The consignee received the ore, paid $4,610.86 of the charges, and refused to pay the remainder thereof. *Held*, these facts raised an implied contract by the consignee to pay the unpaid balance of the legal charges.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 870–872; Dec. Dig. § 194.*]

In Error to the District Court of the United States for the District of Utah; J. A. Marshall, Judge.

Action by the Union Pacific Railroad Company against the American Smelting & Refining Company. From a judgment sustaining a demurrer to the complaint, plaintiff brings error. Reversed and remanded.

George H. Smith, of Salt Lake City, Utah (P. L. Williams, of Salt Lake City, Utah, N. H. Loomis, of Omaha, Neb., and Frank K. Nebeker, of Salt Lake City, Utah, on the brief), for plaintiff in error.

Franklin S. Richards, of Salt Lake City, Utah (Edward S. Ferry and Daniel Hamer, both of Salt Lake City, Utah, on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge. This writ of error challenges a judgment which sustained a demurrer to the complaint of the Union Pacific Railway Company, on the ground that it failed to state facts sufficient to constitute a cause of action, and adjudged that the complainant should take nothing and pay the costs of the suit.

The complaint contained the proper jurisdictional averments, and also alleged these facts: In July and August, 1907, the plaintiff transported over its railroad and over its connecting lines from Goldfield, Nev., by a route designated to the initial carrier by the shipper, to Denver, Colo., seven car loads of ore, and delivered them at Denver to the American Smelting & Refining Company, the defendant, a corporation, to which they were consigned. The legal charges for this transportation and the reasonable value thereof were $7,549.70. The defendant paid $4,610.86 of these charges when it received the ore. The plaintiff has demanded the payment of the unpaid balance thereof, but the defendant fails and refuses to pay any part of them.

The main argument in support of the judgment below is that the consignor or shipper is primarily liable under a contract of consignment for the freight charges on the goods, and the consignee is not;

that a new contract, either express or implied, between the carrier and the consignee is indispensable to the creation of a liability of the latter for such charges; and that the acceptance of the goods by the consignee raises no implication of a contract by the latter to pay the charges for the transportation thereof. But if this contention be sound, it is not conclusive of the question presented in this case, because the averments of the complaint, read, as they must be, in the light of the acts of Congress and the law, present much more than a mere acceptance by the consignee of the goods transported. By virtue of the law of the land, the railroad company had a lien upon this ore until it was delivered to the consignee for the charges for its transportation, and when the railroad company delivered it to the defendant it lost that lien. The amount of the charges for the transportation was fixed by schedules of rates legally published pursuant to the act to regulate commerce and the amendments thereof (Act June 29, 1906, c. 3591, 34 Stat. 586, § 2); and it was unlawful for the plaintiff to give, and for the consignee or any other person to receive, any rebate or concession from this amount, whereby this ore should be transported at a less rate than that named in the schedules of rates filed and published under the acts of Congress. Act Feb. 19, 1903, 32 Stat. c. 708, p. 847 (U. S. Comp. St. Supp. 1911, p. 1309). These things the consignee knew; for it was charged with knowledge of the law.

[1] Thus it will be seen that when the complaint and the law, in accordance with which it must be construed, are read together, its averments show that this ore was consigned to the defendant; that the legal charges for its transportation due to the plaintiff were $7,549.70; that the defendant knew that there were legally published schedules of rates of transportation which fixed the amount of these charges; that the giving by the plaintiff, or the receipt by it, or by any other person, of any rebate or concession from that amount was illegal; that the railroad company had a lien upon this ore for this amount, which it lost by delivering it to the defendant; and that with this knowledge the defendant accepted the ore and paid $4,610.86 of the legal transportation charges and refused to pay the balance. These facts leave no rational avenue of escape from the implication that the defendant, in consideration of the waiver by the plaintiff of its lien for its charges and its delivery of the goods, agreed to pay the lawful charges for their transportation.

[2] These facts certainly established an implied contract by the defendant to pay the $4,610.86, which it did pay. But the legal charges were $7,549.70. The legal presumption is that the plaintiff intended to charge, and the defendant intended to pay, a legal, and not an illegal, amount for this transportation; and the conclusion is that the facts pleaded evidence an implied contract by the defendant to pay the legal charges for the transportation, and that the complaint states a good cause of action. Hatch v. Tucker, 12 R. I. 501, 503, 34 Am. Rep. 707; 3 Kent's Comm. (14th Ed.) * page 222, * page 228, note (e); Hutchinson on Carriers (3d Ed.) § 807; 4 Elliott on Railroads, § 1559; Philadelphia & Read-

ing R. R. Co. v. Barnard & Sons, 3 Ben. Rep. 39, 41, Fed. Cas. No. 11,086; North German Lloyd v. Heule (D. C.) 44 Fed. 100, 101, 10 L. R. A. 814; Davison v. City Bank, 57 N. Y. 81, 83; Dart v. Ensign, 47 N. Y. 619, 622; New Haven & Northampton Co. v. Campbell, 128 Mass. 104, 105, 35 Am. Rep. 360; Grant & Stone v. Wood, 21 N. J. Law, 292, 295, 47 Am. Dec. 162; Taylor v. Fall River Iron Works (D. C.) 124 Fed. 826; Gates v. Ryan (D. C.) 37 Fed. 154, 155; Neilsen v. Jesup (D. C.) 30 Fed. 138, 139; Morse v. Pesant, *41 N. Y. 16, 18; Gulf, Colorado, etc., Ry. Co. v. Hefley, 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910; Texas & Pacific Ry. Co. v. Mugg, 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011; Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 448, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; Baldwin Sheep & Land Co. v. Columbia Southern Ry. Co., 58 Or. 285, 114 Pac. 469, 471.

In every case of this character, in which there is no express contract by the consignee to pay the transportation charges, the question is whether or not the facts of the case raise the implication of such a contract. The law is well settled that such a contract is implied from the acceptance by a consignee or consignees of goods shipped under a bill of lading which contains the stipulation, the consignee or consignees paying freight, or any similar provision. Hatch v. Tucker, 12 R. I. 501, 503, 34 Am. Rep. 707; Cock v. Taylor, 13 East. 399; Dougal v. Kemble, 3 Bing. 383, 389; Merian v. Funck, 4 Denio (N. Y.) 110, 114; Pelayo v. Fox, 9 Pa. 489; Blanchard v. Page, 8 Gray, 281, 291; North German Lloyd v. Heule (D. C.) 44 Fed. 100, 101, 10 L. R. A. 814; Taylor v. Fall River Iron Works (D. C.) 124 Fed. 826, 828; Neilsen v. Jesup (D. C.) 30 Fed. 138, 139; Gates v. Ryan (D. C.) 37 Fed. 154, 155; Davison v. City Bank, 57 N. Y. 81, 85; Grant & Stone v. Wood, 21 N. J. Law, 292, 295, 47 Am. Dec. 162.

The reason for this rule is that the consignee accepts the goods with knowledge that the carrier looks to him for payment of the transportation charges and waives his lien for them by delivery in reliance upon the consignee's implied promise, evidenced by his acceptance of the goods, that he will pay the charges. But this reason exists in all its force, in the absence of a bill of lading, wherever the consignee accepts the goods knowing that the carrier looks to him for payment, waives his lien, and delivers the goods in the faith that he will pay the charges. And as there is in such cases the same reason for the implication of a promise by the consignee to pay these charges as in cases where bills of lading exist, the same implication ought to and does arise. Hatch v. Tucker, 12 R. I. 501, 505, 506, 34 Am. Rep. 707; 4 Elliott on Railroads, § 1559; New Haven & Northampton Co. v. Campbell, 128 Mass. 104, 105, 35 Am. Rep. 360; Irzo v. Perkins (D. C.) 10 Fed. 779, 780, 781.

The fact has not been disregarded that it was held in Sanders v. Vanzeller, 4 Ad. & Ellis (Q. B.) 259, that it was a question for a jury, and not for a court, whether or not a contract by the purchaser of a part of goods consigned under a bill of lading, which was con-

ditioned that the consignee or consignees should pay the transportation charges, was implied to pay a part of the charges by the purchaser's acceptance of the part of the goods. he purchased, and that there are other authorities to this effect (Wilson v. Kymer, 1 M. & S. 157; New York & New England Railroad Co. v. Sanders, 134 Mass. 53), and still other authorities more or less out of accord, upon the special facts of the cases, with the propositions which have been stated (Dempsey, Son & Co. v. Philadelphia & Reading Ry. Co., 30 Pa. Co. Ct. R. 484; Central Railroad Co. of New Jersey v. MacCartney, 68 N. J. Law, 165, 52 Atl. 575, 578; Old Colony Railroad Co. v. Wilder, 137 Mass. 536; Merritt & Chapman D. & W. Co. v. Vogeman [D. C.] 127 Fed. 770; Elwell v. Skiddy, 77 N. Y. 282; Coleman v. Lambert, 5 M. & W. 501); but the stronger reasons and the more persuasive authorities are in accord with the views which have been expressed; and the facts stated in the complaint are such that a verdict of the jury upon them in favor of the defendant could not be lawfully sustained by the court.

The judgment below must therefore be reversed, and the case must be remanded to the court below, with directions to overrule the demurrer and to permit the defendant to answer.