Andrew W. Mellon, Director General of Railroads, as Agent, Operating Illinois Central Railroad, Plaintiff in Error, v. G. J. Landeck and L. J. Pomeroy, Trading as Landeck Lumber Company, Defendants in Error.

## Gen. No. 32,514.

354 

 Opinion

filed April 9, 1928.

Fred H. Montgomery, Herbert J. Deany and John T. Quisenberry, for plaintiff in error; Vernon W. Foster, of counsel.

Harry A. Biossat, for defendants in error.

Mr. Justice McSurely delivered the opinion of the court.

Plaintiff brought suit to recover from defendants on three claims for freight and switching charges aggregating $367.76. Upon trial by the court it had judgment on the first claim amounting to $22.97 and suffered an adverse judgment as to the balance. Plaintiff by this writ of error seeks the reversal of the adverse judgment and asks that it be given judgment for the entire amount in this court.

There is virtually no dispute as to the facts, most of which are stipulated. As there is no controversy as to the first claim, we shall refer only to the second and third.

The second claim is for freight and other incidental carrier charges aggregating $295.20 on a carload shipment of lumber from Forest, Louisiana, to Chicago, Illinois, consigned to the defendants in Chicago. Plaintiff claims that defendants reconsigned this car and caused it to be reconsigned three times after its arrival in Chicago and exercised other acts of ownership, thus becoming liable for the charges.

The third claim is for freight undercharges on two carload shipments of lumber from Texas, both consigned to the defendants and both reconsigned by them to the Globe-Bosse-World Furniture Company, Evansville, Indiana. Upon the delivery at Evansville the

furniture company paid the freight charges on the cars, amounting to $170.47 and $159.32 respectively, whereas the amounts actually due in accordance with the proper tariffs were $200.78 and $178.60 respectively, which left an undercharge due and unpaid of $30.31 and $19.28, or a total of $49.59.

Did the defendants, as consignees, exercise acts of ownership as to the car involved in the second claim which made them liable for the carrier charges? August 9, 1918, the car of lumber arrived at Chicago from Louisiana and notice of this was given the defendants on the same day. August 13th defendants wrote a letter to plaintiff requesting that this car be delivered to the International Harvester Company, Weber Wagon Works, Chicago, Illinois. August 17th the car was transported and delivered to the Weber Wagon Works of the International Harvester Company. August 20th the Harvester Company ordered the car rebilled to its Plano Works, which was done. August 23rd the car was ordered reconsigned by the Harvester Company to the E. L. Cook Lumber Company, Twenty-Second street and Ashland avenue, Chicago, and the charges for this particular switching movement were paid in advance by the Harvester Company. August 28th the car was unloaded by the Cook Lumber Company and the lumber placed in storage. August 23rd the defendants wrote a letter to the Harvester Company inclosing a check for $15.45 "in payment of switching charges" on the car. October 26th the defendants wrote the E. L. Cook Lumber Company referring to a conversation with reference to this lumber and requested the Cook Company to secure a permit to reload the lumber on this same car and ordered it to be shipped to the Shafer Lumber Company, Cairo, Illinois. The Cook Lumber Company's bill for storage of the lumber was rendered against and paid by the defendants. Over objection of plaintiff, certain letters were introduced in evi-

dence, written some time subsequent to the disposition of this car. They were incompetent and not important. They refer to a request by defendants upon the plaintiff to collect this freight from a third party in Memphis, Tennessee, and a reply by plaintiff and one by this third party. One of the defendants testified that when the lumber arrived in Chicago it was inspected and rejected as not up to grade. This testimony was immaterial, as the fact of its rejection was not then communicated to plaintiff but only an order to reconsign the same to the Harvester Company.

A consignee by accepting a shipment becomes liable to the carrier for the lawful freight charges accrued thereon. The greater weight of authority and the most convincing reasoning favor the rule that, when a consignee orders a reshipment, acceptance of the shipment is necessarily implied. It has been so held in *Chicago, I. & L. Ry. Co. v. Monarch Lumber Co.*, 202 Ill. App. 20, and especially in the exhaustive opinion of *New York Cent. R. Co. v. Platt & Brahm Coal Co.*, 236 Ill. App. 150, and in the recent case of *Indiana Harbor Belt R. Co. v. Lieberman*, 245 Ill. App. 503. The opinions in these cases contain an examination and citation of a large number of decided cases involving the instant point. In *New York Cent. R. Co. v. Warren Ross Lumber Co.*, 234 N. Y. 261, it was said:

"While no contractual relation arises between carrier and consignee by the mere designation of the latter as consignee, the consignee becomes liable for the freight charges when an obligation arises on his part from presumptive ownership, acceptance of the goods and the services rendered and the benefits conferred by the plaintiff for such charges." And a consignee must be held to have accepted the goods "when it exercised dominion over them by giving directions for their delivery."

We note in opinions in *Chicago, I. & S. R. Co. v. D. E. McMillan & Brother Coal Co.*, 207 Ill. App. 58,

and *Pere Marquette R. Co. v. American Coal & Supply Co.*, 239 Ill. App. 139, but do not think they should control our conclusion on the facts now before us.

Defendants exercised dominion over the shipment from the time it arrived in Chicago. At their request it was reconsigned to the Harvester Company and again reconsigned to the Cook Lumber Company, whose storage charges were paid by the defendants. They also requested the Cook Lumber Company to reload and ship the lumber to the Shafer Company at Cairo, Illinois. These were clearly acts of presumptive ownership exercised by the defendants and they are therefore liable for the carrier charges.

The third claim arose out of two cars shipped from Texas to defendants in Chicago and while in transit reconsigned by them to Evansville, Indiana, where, by mistake, the freight charges collected were $49.59 less than the tariff charges. The letter to plaintiff ordering the reconsignment ordered that the defendants' name should appear as shippers. When plaintiff made a demand on the ultimate consignee at Evansville for the shortage in the charges, defendants wrote plaintiff advising that the Evansville Company was not responsible for these charges and requested information so that "we can handle the matter without further delay." Defendants are liable for the difference between the freight actually collected from the furniture company at Evansville, Indiana, and the applicable tariff charges. At the request of defendants they became the shippers of this lumber from Mounds, Illinois, the point of reconsignment, to Evansville, Indiana, and in their letter they particularly advised plaintiff that the Evansville company was not responsible for these charges, as it had settled with defendants for the same.

Where a freight charge has mistakenly been paid which is later discovered to be less than the applicable tariff rate, the difference may be collected by the car-

rier. *Pittsburgh, C., C. & St. L. Ry. Co. v. Fink*, 250 U. S. 577; *Louisville & N. R. Co. v. Maxwell*, 237 U. S. 94.

Under the law and the undisputed facts plaintiff was entitled to recover the entire amount of its claim, and as the case was tried by the court without a jury, the judgment will be reversed with a finding of fact and judgment will be entered in this court for plaintiff and against defendants in the sum of $367.76.

*Reversed with finding of fact and judgment here for plaintiff for $367.76.*

MATCHETT, P. J., and O'CONNOR, J., concur.

Finding of fact: We find that defendants accepted the shipments in question and became liable to pay all transportation charges therefor and became liable for and agreed to pay the full tariff rates, or the difference between the rates actually collected and the applicable tariff rates, on the shipments reconsigned from Mounds, Illinois, to Evansville, Indiana.